**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHANCELLOR SU and PEARLL CLEMENTE,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**AT&T, INC., JOHN AND JANE DOES 1-10 (fictitious names), and ABC CORP. 1-10 (fictitious entities),**<br><br>**Defendants.** | Civ. No. 19-15989 (KM) (JBC)<br><br>**AMENDED OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiffs Chancellor Su and Pearll Clemente worked for AT&T at its store in Fort Lee, New Jersey. In 2018, AT&T fired them after it conducted a nationwide investigation into allegations of improper sales practices by its employees. Su and Clemente sued AT&T, claiming that they had been wrongfully terminated. Now before the Court is defendant AT&T's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (DE 4). For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

#### A. Facts[1]

Plaintiff Chancellor Su worked for over twenty years at the Fort Lee AT&T store. (Compl. ¶ 7). Plaintiff Pearll Clemente also worked at the same store for several years. (Compl. ¶ 8). Both were loyal and exemplary employees. (Compl. ¶¶ 7 & 8).

---

[1] For purposes of this motion, the facts alleged in the complaint, not yet tested by any fact finder, are assumed to be true. Docket entries will be cited as "DE __" and the Complaint will be cited as "Compl."

In approximately July 2016, AT&T acquired the satellite TV provider DirecTV and later that year, it launched a service known as "DirecTV Now," which allows customers to live-stream TV through AT&T's wireless networks. (Compl. ¶¶ 9 & 10). To increase the number of DirecTV Now subscribers, AT&T in 2017 began a nationwide campaign of selling the service directly to its wireless customers when they signed up for new phone lines or upgraded devices. (Compl. ¶ 11). Employees were told to sign up customers "at all costs." (Compl. ¶ 11). Before it implemented this "sell now and ask questions later" approach, AT&T neither instructed its employees how to sell DirecTV Now nor advised them what sales tactics it deemed permissible under its corporate policies. (Compl. ¶ 12).

Managers and supervisors instructed Su and Clemente, as well as other AT&T employees, to use fake names and email addresses to create unauthorized accounts for customers who resisted their DirecTV Now up-sells. (Compl. ¶ 13). They also encouraged Su and Clemente to offer discounts on accessories in exchange for DirecTV Now subscriptions and to offer DirecTV Now subscriptions to customers who had accrued data-overage charges. (Compl. ¶ 14).

In March 2018, based on AT&T's perception of the use of improper sales tactics, the company began investigating the practices of the employees responsible for selling DirecTV Now subscriptions. (Compl. ¶ 15). Su and Clemente told the AT&T investigators that they had been following the orders of their managers and supervisors when selling DirecTV Now subscriptions, but both were fired as a result of the investigation. (Compl. ¶ 16). Both have been unable to find comparable positions since then. (Compl. ¶ 17).

### B. Procedural History

On June 24, 2019 Su and Clemente sued in New Jersey state court. (DE 1 at 11). Their complaint asserted one count of common-law wrongful termination, arguing that the "such termination . . . was in violation of an established rule of public policy as enumerated by the legislature, an

administrative rule, regulation or decision, judicial decision and/or some other established rule of public policy and/or was otherwise in violation of public policy." (Compl. ¶ 21). On July 29, AT&T removed the case to federal court on diversity grounds, see 28 U.S.C. §§ 1441(a) & 1446(a). (DE 1). AT&T filed this motion to dismiss on August 19. (DE 4).

## II. DISCUSSION

Because this matter involves a controversy between citizens of different states and the amount in controversy is alleged to exceed the sum of $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). New Jersey substantive law will apply. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion the Court is confined to the allegations of the complaint, with narrow exceptions:

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

### B. Wrongful Termination

Absent a contract, employment in New Jersey is an at-will relationship, generally terminable for any reason or for no reason. *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 508–09 (N.J. 1980). The discharge of an at-will employee may nevertheless be wrongful and actionable if it violates a clear mandate of public policy. *Id.* at 512. In *Pierce*, the New Jersey Supreme Court adjudicated a lawsuit filed by a physician against her former employer after she resigned over a medical-ethics dispute with her superior. *Id.* at 507–08. The Court recognized that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Id.* at 512. Nonetheless, it determined that the Hippocratic oath does not constitute such a clear mandate of public policy. Public policy, the court held,

4

derives from the decisions of governments, not professional associations. *Id.* at 514. The Court determined that the employer had therefore not violated a clear mandate of public policy. *Id.*

The tort of wrongful termination was developed to fill a gap in the law by prohibiting the discharge of nominally at-will employees for reasons that violate public policy. *See id.* at 512 ("Employees will be secure in knowing that their jobs are safe if they exercise their rights in accordance with a clear mandate of public policy. On the other hand, employers will know that unless they act contrary to public policy, they may discharge employees at will for any reason."). To identify the relevant public policy, courts are to look to legislation, administrative rules, regulations or decisions, and judicial decisions. *Id.* In addition, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that Pierce requires." *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 99 (1992). Critically, plaintiff must "prove not only that he or she complained about a[n employer's] policy, but that his or her resulting discharge violated a clear mandate of public policy." *Tartaglia v. UBS Paine Webber, Inc.*, 197 N.J. 81, 112 (2008); *see also Daniels v. High Point Bd. of Educ.*, No. A-1112-17T1, 2019 N.J. Super. Unpub. LEXIS 91 at *3 (App. Div. Jan. 11, 2019) ("Under *Pierce*, plaintiff bore the burden of 1) identifying a specific expression of public policy and[] 2) establishing he was fired in contravention of that specific expression of public policy.").

Here, Plaintiffs' case rests on a rather generic understanding of *Pierce*, namely that it implements "a public policy . . . to not terminate employees under these circumstances." (DE 7 at 1). The Court presumes that "these circumstances" refers to the termination of an employee who follows a manager's instruction, even if corporate policy turns out to be contrary. (*See* DE 7 at 1). In short, Plaintiffs are attempting to shift the accountability for their own wrongdoing to AT&T. I hold, however, that Plaintiffs have failed to state a claim for wrongful termination under either prong of *Pierce*. They have

neither (1) identified a specific expression of public policy that AT&T violated, nor (2) alleged that they expressed concern about the sales practices that their managers and supervisors ordered them to observe.

First, Plaintiffs' complaint does not on its face identify which public policy AT&T allegedly violated by firing Su and Clemente. Plaintiffs merely allege that they and others were terminated following an investigation into improper sales tactics and other improper conduct. *Pierce*, however, requires more: a plaintiff must identify a public policy that is expressed in, for instance, legislation, an administrative rule or regulation, or an administrative or judicial decision. Plaintiffs have not identified any such source. Instead, their opposition papers vaguely allude to job security as a public policy. (*See* DE 7 at 5 ("Upon examining those allegations contained in Complaint, we are, respectfully, left with a situation that, if gone unpunished, or at a minimum unexplored, would be detrimental to the citizens of New Jersey, and, in fact, hundred[s] of citizens of this Country."); DE 7 at 7 ("Plaintiffs, relying on these jobs for their own and their families' financial and economic stability, were just two of countless numbers of Defendant's employees across the nation for whom the *Pierce* decision and its progeny ought properly protect.")).

To be sure, job security is an important interest, but there are two problems with the Plaintiffs' invocation of it. First, of course, the reasoning is circular; it is simply a negation of the undisputed background principle that, absent a contract, employment is at-will. It makes little sense to say that the countervailing "public policy" is that employment is *not* at-will. Second, this reasoning runs up against the public and corporate policies that favor fair and honest business practices. Though not stated explicitly in the complaint, Su and Clemente essentially concede that AT&T determined that they had strayed beyond the bounds of what it considered acceptable business practices. As an employer, AT&T was entitled to make that determination and to terminate their employment at any time.

Second, Plaintiffs do not allege that they ever declined to engage in the conduct that allegedly violated public policy. Indeed, they conceded that they

6

*did* engage in these dishonest sales practices. *Pierce* and *Tartaglia* are clear: an employee who claims wrongful termination for his or her refusal to comply with instructions must have openly opposed those instructions at the time. *Tartaglia,* 197 N.J. at 109 (2008) ("[*Pierce*] requires, as well, a sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy."). In other words, New Jersey common law does not permit an employee to engage in dishonest behavior and then, post-termination, sue based on post hoc scruples, unexpressed at the time. In short, these plaintiffs were not fired because they objected to unethical sales practices; they were fired because they did not object and went along with them.

AT&T fired Su and Clemente—who were at-will employees—when it determined that they had violated corporate policies and principles of ethical sales conduct. Su and Clemente say they were just following their managers' instructions. The suggestion is that AT&T is hypocritical—shocked, like Capt. Renault, to discover that gambling is going on in a casino[2]—but that characterization, even if accurate, would not implicate public policy. The point is that these allegations fall far short of establishing an exception to the principle of at-will employment that would permit plaintiffs to maintain a cause of action for wrongful termination.

### III. CONCLUSION

For the reasons set forth above, AT&T's motion to dismiss is **GRANTED**. Because this is an initial dismissal for failure to state a claim, it is without prejudice to the filing, within 30 days, of a properly supported motion to amend. A separate order will issue.

Dated: January 8, 2020

*[signature]*

Hon. Kevin McNulty
United States District Judge

---

[2] *Casablanca* (Warner Bros. 1942)